**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

                                Hon. Hugh B. Scott

              v.                      13CR80S

                                Decision &
                                Order

**Tyshawn Bradley Busch, et al,**
                **Defendants.**

Before the Court are the following motions filed by the respective defendants: Darnell Brown (Docket Nos. 101, 103 and 105); Nanette Brown (Docket No. 104); Melvin Tucker (Docket No. 107); Latifah Donaldson (Docket No. 108); Brandon Atkins (Docket No. 109); Tyshawn Bradley (Docket No. 111); David Varner (Docket No. 112) Phayon Redmon (Docket No. 113); Dallas McLamore (Docket Nos. 115 and 151); Tara Robinson (Docket No. 117); Tashawn Gay (Docket Nos. 124 and 126); and Eric Ross (Docket No. 125).

**Background**

On March 27, 2013, the Grand Jury for the Western District of New York issued an indictment charging Tyshawn Bradley ("Bradley"), Darnell Brown ("D. Brown"), Dallas McLamore ("McLamore"), Eric Ross ("Ross"), Brandon Atkins ("Atkins"), Tashawn Gay ("Gay"), Melvin Tucker ("Tucker"), Nannette Brown ("N. Brown"), David Varner ("Varner"),

Latifah Donaldson ("Donaldson"), Tara Robinson ("Robinson") and Phayon Redmon ("Redmon") with conspiracy to commit the following offenses:

(a) to possess and distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B);

(b) to use and maintain a place for the purpose of manufacturing and distributing cocaine base in violation of 21 U.S.C. §856(a);

(c) possession with the intent to distribute cocaine base on and within 1000 feet of housing owned by the Buffalo Municipal Housing Authority, a public housing authority, in violation of 21 U.S.C. §860(a); and

(d) employing persons under the age of 18 to possess and distribute cocaine base in violation of 21 U.S.C. §861(a)(1). [Count 1].

The Grand Jury also charged: Bradley, D. Brown, McLamore, Ross and Varner with maintaining a drug involved premises at 305 Perry Street, Apt. 6C in violation of 21 U.S.C. §856(a) and 18 U.S.C. §2 [Count 2]; Bradley, D. Brown and McLamore with maintaining a drug involved premises at 124 Fulton Street, Apt. 4B in violation of 21 U.S.C. §856(a) and 18 U.S.C. §2 [Count 3]; Bradley, D. Brown, McLamore and Robinson with maintaining a drug involved premises at 119B Fulton Street in violation of 21 U.S.C. §856(a) and 18 U.S.C. §2 [Count 4]; Atkins with possession with the intent to distribute cocaine base on February 8, 2013 in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(C) [Count 5]; Atkins with possession with the intent to distribute cocaine base on February 15, 2013 in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(C) [Count 6]; Atkins with possession with the intent to distribute cocaine base on February 19, 2013 in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(C) [Count 7]; Atkins with

possession with the intent to distribute cocaine base on March 5, 2013 in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(C) [Count 8]; Atkins with possession with the intent to distribute cocaine base on March 14, 2013 in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(C) [Count 9]. The indictment also includes various forfeiture allegations.

**Discovery**

The defendants' respective motions seek various types of pretrial discovery. The government has produced substantial discovery in this case. On April 22, 2013, Chief Judge William M. Skretny issued a Protective Order restricting the government's disclosure of wiretap information – allowing defense counsel to view the information and discuss the information with the defendants in counsel's respective offices, but counsel were not permitted to provide copies of the information to the defendants. (Docket No. 51). Defendant D. Brown objected to the protective order on First Amendment and Due Process grounds. Chief Judge Skretny rejected these arguments, but provided that to the extent that D. Brown argued that the terms of the protective order made it impractical for him to view the material because he is incarcerated, the parties were to discuss the issue to reach an agreement as to how to resolve the issue. During oral argument, counsel for D. Brown advised that the issue had not been resolved. To the extent that counsel for D. Brown reasserted First Amendment and Due Process arguments, those issues have been resolved by Chief Judge Skretny (Docket No. 51 at page 2). It appears that only a logistical issue remains as to how counsel can review this material with his client in a correctional facility. The Court directs that counsel for D. Brown and the government work together to make arrangements so that counsel can meet with D. Brown at the correctional

facility in which he is housed to review the material subject to the terms of the Protective Order. The remaining terms of the Protective Order are to be followed. If a Court Order is necessary to obtain the cooperation of the correctional facility, the parties shall agree to the terms of a proposed order and submit it to the Court for consideration.  D. Brown also argued that discovery as to the ownership of the  housing project by the Buffalo Municipal Housing Authority ("BMHA") has not yet been provided.  To the extent that the government must establish ownership of the housing project by the BMHA pursuant to 21 U.S.C. § 860(a), the government shall produce documentary evidence, if any, of such ownership to the defendants.  Defendants Robinson and Bradley have asserted that they are still awaiting the production of laboratory reports. At oral argument, the government represented that the reports would be produced once they were obtained by the government.  It appears that all other discovery issues have been resolved.

**Rule 12 Notice**

Various defendants have included requests for notice under Rule 12 in their respective motions.  The government's  respective responses to such motions often included notice under Rule 12.  (i.e. Docket No.  130 at page 10). The defendants have not articulated that such notice was inadequate.  In any event, if not already provided, the government shall provide notice to the defendants pursuant to Rule 12.

**Exclusion of Non-Testifying Co-Conspirators**

Several of the defendants seek to compel disclosure of and preclusion of statements made by co-conspirators. The Jencks Act provides the exclusive procedure for discovering statements that government witnesses have given to law enforcement agencies. U.S. v. Covello, 410 F.2d 536, 543 (2d. Cir.) cert. denied 396 U.S. 879 (1969). The defendants are not entitled to a pretrial hearing to determine the admissibility of co-conspirator statements under U.S. v. James, 590 F.2d. 575 (5th Cir. 1979). James hearings are not required in the Second Circuit. Instead, in this circuit the judge presiding over the trial of the case makes a ruling pursuant to U.S. v. Geaney, 417 F.2d 1116 (2d Cir. 1969) during the trial regarding the admissibility of the statements. See also U.S. v. Feola, 651 F.Supp 1068 (SDNY 1987), aff'd 875 F.2d 857 (2d Cir. 1989, cert. denied 493 U.S. 834 (1989); U.S. v. Margiotta, 688 F.2d 108 (2d Cir. 1982) cert. denied 461 U.S. 913 (1983); U.S. v. Mastropieri, 685 F.2d 776 (2d Cir. 1982) cert. denied 459 U.S. 945 (1982); U.S. v. Persico, 621 F.Supp 842 (SDNY 1985) aff'd 774 F.2d 30 (2d Cir. 1985).

Similarly, challenges to the admissibility of a statement under Bruton v. United States, 391 U.S. 123 (1968) are more appropriately determined by the presiding District Judge at trial.

**Identity of Informants**

The defendants seek the pretrial disclosure of the identity of any informants in this case.

Generally, the government is not required to furnish the identities of informants unless it is essential to the defense. Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988). Rule 16 does not require the government to disclose the names of witnesses prior to trial. United States v. Bejasa, 904

F.2d 137, 139 (2d. Cir.) cert. denied 498 U.S. 921 (1990). The defendants have not established a particularized need for pretrial disclosure of the identities of any informants or the government's witnesses. The government shall disclose the names of witnesses and informants as directed by the District Court in its trial Order.

**Bill of Particulars**

The defendants, respectively, seek a Bill of Particulars from the government typically requesting information such as a list of all unindicted co-conspirators, the specific dates, times and locations of the conspiracy, and the specific volume, weight and quantity of any alleged drug sales (i.e. Docket No. 101-1 at page 3).

The government argues that a Bill of Particulars is not required in this case. Most of the defendants seek the exact places, dates and times of the alleged conspiracy. Several courts have held that the specific locations where acts in furtherance of the conspiracy occurred or formed are evidentiary matters not subject to particularization. See e.g., United States v. Feola, 651 F. Supp.1068, 1133 (S.D.N.Y. 1987).; United States v. Payden, 613 F. Supp. at 817; United States v. Bidloff, 82 F. Supp. 2d, 78, 83 (W.D.N.Y. 1999) (government need not particularize "elsewhere" referred to in conspiracy indictment). It is settled that the government should not be required to furnish particulars relating to the formation of a conspiracy, including when and how it was formed and when a particular defendant joined, because such details need not be proven at trial. United States v. Bin Laden, 92 F. Supp. 2d 225, 242-243 (S.D.N.Y. 2000); United States v. Ianelli, 53 F.R.D. 482, 483 (S.D.N.Y. 1981); United States v. Crisona, 271 F. Supp. 150 (S.D.N.Y. 1967); United States v. Malinsky, 19 F.R.D. 426, 428 (S.D.N.Y. 1956)(denying

requests for particulars as to the details of the creation of the conspiracy and the defendant's joinder therein). "Such requests — for when, where, how, and with whom each individual joined a conspiracy — have "almost uniformly been denied." United States v. Wilson, 565 F. Supp. 1416, 1438 (S.D.N.Y. 1983)(quoting United States v. Kahaner, 203 F. Supp. 78, 84 (S.D.N.Y. 1962)); see also United States v. Muyet, 945 F. Supp. 586, 599 (S.D.N.Y. 1996) (stating "defendants are not entitled to a bill of particulars setting forth the 'whens', 'wheres', and 'with whoms' of [a] conspiracy"). To the extent that the defendants seek disclosure of the government's legal theories, this too, is not the proper subject of particularization. United States v. Parker, 165 F. Supp.2d 431, 467 (W.D.N.Y. 2001). Similarly, the government is not required to identify the names of all unindicted co-conspirators. The defendants have not established that such disclosure is necessary prior to the disclosure of such information along with other Jencks material. See United States v. Gotti, 784 F. Supp. 1017, 1018 (E.D.N.Y. 1992) (appellate case law is clear that refusal of a district court to direct the filing of a bill of particulars as to the names of unindicted coconspirators is not an abuse of discretion) (collecting cases); see also United States v. Torres, 901 F.2d 205, 233-34 (2d Cir.), cert. denied, 498 U.S. 906 (1990) (request for bill of particulars seeking, among other things, names of coconspirators "known and unknown," denied).

    Here, the discovery produced in this case provides the defendants with substantial information regarding the governments's case. Among other things, the record reflects that the defendants have been provided with access to voluminous video surveillance, as well as copies of intercepted wire communications and various FBI reports summarizing the evidence collected during the investigation. (Docket No. 137 at page 8). Upon review of the indictment, and in

light of the discovery and information already provided or promised in this case, the defendants have not demonstrated that further particularization is required to protect them from double jeopardy or to enable them to adequately prepare a defense and avoid surprise at trial.

**Brady and Jencks Act Material**

The defendants seek the disclosure of all potentially exculpatory materials, including information to be used for the impeachment of the government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct ... attributed to the [government's] witness." U.S. v. Kiszewski, 877 F.2d 210 (2d Cir. 1989). The defendants also seeks disclosure of the statements of witnesses under the Jencks Act (15 U.S.C. §3500).

The government has acknowledged its obligations under Brady and Giglio v. United States, 405 U.S. 150 (1972), as well as the Jencks Act. (i.e. Docket No. 130 at page 10).

Neither the Supreme Court, nor the Second Circuit[1], have ruled directly on whether there is a meaningful distinction between "exculpatory Brady" and "impeachment Brady" materials for purposes relating to the time within which such information must be disclosed. Several other courts have discussed the issue at hand, which often arises in the context of a

---

[1] In a footnote in its opinion in Lucas v. Regan, 503 F.2d 1, 3 n.1 (1974), the Second Circuit stated that "[n]either Brady nor any other case we know of requires that disclosures under Brady be made before trial."

potential, if not inherent conflict between the government's obligations to disclose under Brady, and the governments right to delay disclosure of certain information pursuant to the Jencks Act. Those cases suggest that the court has some discretion with respect to directing the timing of such disclosure.  U.S. v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979)(the Court interpreted Brady to require disclosure "at the appropriate" time, which often is prior to trial); U.S. v. Perez, 870 F.2d 1222 (7th Cir. 1989)(the government's delay in disclosing Brady material violates due process only if the delay prevented the defendant from receiving a fair trial); U.S. v. Ziperstein, 601 F.2d 281 (7th Cir. 1979)(a defendant receives a fair trial, notwithstanding delayed disclosure of Brady material, as long as disclosure is made before it is too late for the defendant to make use of any benefits of the evidence). But see U.S. V. Wilson, 565 F.Supp 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior to trial); U.S. Biaggi, 675 F.Supp 790 (S.D.N.Y. 1987)(information bearing on a witness' credibility may be turned over at the same time as [Jencks Act] materials); U.S. V. Feldman, 731 F.Supp 1189 (S.D.N.Y. 1990)(it is sufficient for the government to disclose Brady impeachment materials along with [Jencks Act] materials).

     The Jencks Act relates only to "statements" made by government witnesses.  Such statements may include inconsistencies which make them useful for impeachment purposes, and thus, subject them to disclosure under Brady principles.  To this extent, it has been suggested that the constitutional requirements underlying Brady could act to modify the Jencks Act. U.S. v. Campagnuolo, 592 F.2d 852, 860 (5th Cir. 1979). But see U.S. v. Presser, 844 F.2d 1275 (6th Cir. 1988)(the government may not be compelled to pretrial disclosure of Brady or Jencks material).  The record in this case does not reflect whether any of the materials withheld by the

9

government may be considered both Brady and Jencks material.  Certainly "impeachment Brady" material may include several items which are not considered "statements" under the Jencks Act.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie Brady mandate that the court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined Brady/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, ... sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial ... so that those abhorrent lengthy pauses at trial to examine documents can be avoided." U.S. v. Percevault, 490 F.2d 126 (2d Cir. 1974);  U.S. V. Green, 144 F.R.D. 631 (W.D.N.Y. 1992).

In the instant case, and while balancing all of the above, the Court concludes that disclosure of such inculpatory and impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendants to have a fair opportunity to utilize the information at trial) is sufficient.

**Rule 404, 608 and 609 Material**

The defendants also seek information under Rules 404, 608 and 609 of the Federal Rules of Evidence.  Federal Rule of Evidence 404(b) governs requests for disclosure of all evidence of prior bad acts that the government intends to use in its case-in-chief.  Rule 404 requires that the defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use

10

at trial."   To the extent that the government intends to use any such evidence of a prior bad act in its case in chief, the government shall produce all Rule 404(b) evidence as directed by the District Court in the trial order.

With respect to the defendants' requests under Rules 608 and 609, the only notice requirement imposed by either Rule applies where a party intends to introduce evidence of a conviction that is more than ten years old. Under such circumstances, Rule 609(b) mandates that "the proponent [give] to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence." To the extent the government intends to use a conviction more than 10 years old, it must comply with this requirement.  The government has no obligation to provide the defendant with notice of any material that will be used to impeach him pursuant to Rule 608 should he elect to testify. See United States  v. Livoti, 8 F.Supp.2d 246 (S.D.N.Y. 1998);  United States v. Song, 1995 WL 736872, at *7 (S.D.N.Y. Dec.13, 1995).

**Preservation of Rough Notes and Evidence**

The defendants seek the preservation of notes taken by law enforcement personnel involved in this matter and other evidence. The government is directed to preserve this material.

**Grand Jury Transcripts**

The defendants seek disclosure of the grand jury transcripts in this matter.  There is a presumption that grand jury proceedings are lawful and regular, (United States v. Torres, 901 F.2d 205, 232 (2d Cir.) (quoting Hamling v. United States, 418 U.S. 87, 139 n. 23, 94 S.Ct.

2887, 2918 n. 23,  41 L.Ed.2d 590 (1974), *cert*. denied, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990)), and disclosure of grand jury proceedings is available only by order of the Court. (See  Fed.R.Crim.P. 6(e)).  A party seeking disclosure of  grand jury proceedings bears the burden of establishing a "particularized need"  or "compelling necessity" for such disclosure which outweighs the policy of  grand jury secrecy.  Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S.  211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979);  Pittsburgh Plate Glass Co. v.  United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959);  In re Rosahn, 671 F.2d 690, 695 (2d Cir.1982). Unspecified allegations of  impropriety or mere speculation are not sufficient to satisfy this heavy  burden.  United States v. Calandra, 414 U.S. 338, 345, 94 S.Ct. 613, 618-19,  38 L.Ed.2d 561 (1974).  Therefore, "review of grand jury minutes is rarely permitted without specific factual allegations of governmental misconduct."  Torres, 901 F.2d at 233.

  The defendants have not presented any particularized need or advanced any proof controverting the presumption of regularity in the grand jury proceedings in this case. This request is denied.

**Audibility Hearing**

  Several defendants seek an audibility hearing regarding tape recordings the government intends to use at trial. The defendants do not allege that any particular tape is inaudible. It appears that this issue is moot.

**Requests under Rules 806 and 807**

Some defendants have also requested information pursuant to Rules 806 and 807 of the Federal Rules of Evidence, relating to possible hearsay evidence the government intends to use at trial. In the event the government determines that it will attempt to introduce such hearsay statements into evidence, the government is directed to notify the defendant of such in accordance with the trial order issued by the District Court.

**Expert Disclosure, Summaries, Voir Dire Experts**

The defendants have requested disclosure relating to any experts the government intends to use at trial. To the extent not already provided, the government shall make disclosure of the government's experts as directed in the District Court's trial order. The defendants have also requested production of government summaries, leave to cross-examine any expert government witnesses outside the presence of the jury, and to have an active role in the voir dire process. These issues are more appropriately determined by the District Court Judge presiding over the trial in this matter.

**Severance and Trial Scheduling Motions**

Defendants Atkins and Bradley seek severance from the other defendants in this case. (Docket No. 109 at page 34; Docket No. 111 at page 33). Such motions are more appropriately determined by the District Judge presiding over the trials in this matter. Thus, the Court defers these motions to the District Judge. A separate motion for severance filed by D. Brown (Docket No. 100) has already been decided by Chief Judge Skretny (Docket No. 155).

**Conclusion**

The various omnibus motions filed on behalf of the respective defendants are granted in part and denied in part consistent with the above.

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
May 30, 2014